AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☒ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

**OFFENSE CHARGED**

Title 15, United States Code, Section 1 (Price Fixing)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See attachment

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED
SEP -2 2015
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT - U.S**
▸ NEC TOKIN Corporation

**DISTRICT COURT NUMBER**
CR 15 0426 RS

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: Jacklin Lem, Antitrust Division

☐ U.S. Attorney ☒ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Jacklin Lem, Trial Attorney

**DEFENDANT**

IS *NOT* IN CUSTODY
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▸
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge
5) ☐ On another conviction } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed

DATE OF ARREST ▸ Month/Day/Year
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▸ Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:            Before Judge:

Comments:

15-426 RS

## PENALTY SHEET

Corporation:   NEC TOKIN CORPORATION

<u>Maximum Penalties</u>, (For Each Count):

1. A fine in an amount equal to the largest of:

    A.   $100 Million.

    B.   Twice the gross pecuniary gain derived from the crime.

    C.   Twice the gross pecuniary loss caused to the victims of the crime.

2. A term of probation of at least one year but not more than five years.

3. $400 special assessment for each count.

4. Restitution.

JACKLIN CHOU LEM (CSBN 255293)
ALEXANDRA J. SHEPARD (CSBN 205143)
HOWARD J. PARKER (WSBN 07233)
HENRY J. HAUSER (CSBN 286744)
ANDREW J. NICHOLSON-MEADE (CSBN 284070)
PARADI JAVANDEL (CSBN 295841)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
jacklin.lem@usdoj.gov

Attorneys for the United States

FILED
SEP -2 2015
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) No. CR 15 0426 RS |
| --- | --- |
| v. | ) VIOLATION: 15 U.S.C. § 1 |
| | ) Price Fixing |
| NEC TOKIN CORPORATION, | ) |
| Defendant. | ) |

INFORMATION

The United States of America, acting through its attorneys, charges:

I.   DESCRIPTION OF THE OFFENSE

1.   NEC TOKIN CORPORATION ("defendant" or "NEC TOKIN") is made a defendant on the charge stated below.

INFORMATION (NEC TOKIN)                    1

2.  From at least as early as September 1997 and continuing until in or about January 2014, coconspirators of the defendant entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere. The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

3.  The defendant knowingly joined and participated in the charged conspiracy from at least as early as April 2002 until in or about December 2013.

4.  The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to fix prices and rig bids of certain electrolytic capacitors.

## II. BACKGROUND

5.  Capacitors, also known as condensers, are a fundamental component of electrical circuits and are used primarily to store and regulate electrical current. Electrolytic capacitors, including aluminum and tantalum types, are a major sub-category of capacitors. Electrolytic capacitors are ubiquitous and are found in many products that use electricity, run on a battery, or plug into a socket. Desktop and notebook computers, flat-screen televisions, DVD players, video and still digital cameras, gaming systems, car engine and airbag systems, home appliances, office equipment, and motherboards and other printed circuit boards are some of the products that contain electrolytic capacitors.

## III. DEFENDANT AND COCONSPIRATORS

6.  During the time period identified in paragraph 2, NEC TOKIN, a corporation organized and existing under the laws of Japan, manufactured tantalum electrolytic capacitors sold in the United States and elsewhere.

//
//

7. During the time period identified in paragraph 2, NEC TOKIN's coconspirators included business organizations that manufactured electrolytic capacitors sold in the United States and elsewhere.

8. Various business organizations and individuals, not made defendants in this Information, participated as coconspirators in the offense charged in this Information and performed acts and made statements in furtherance of it.

9. Whenever in this Information reference is made to any act, deed, or transaction of a business organization, the allegation means that the business organization engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives, or by or through the officers, directors, employees, agents, or other representatives of its majority-owned and -controlled subsidiaries, while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

### IV. MEANS AND METHODS OF THE CONSPIRACY

10. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

    a) participated at times in meetings, conversations, and communications with each other in China, Germany, Japan, Singapore, Taiwan, the United States, and elsewhere to discuss prices and bids of certain electrolytic capacitors;

    b) agreed during various meetings, conversations, and communications to fix, increase, maintain, and stabilize prices and rig bids of certain electrolytic capacitors;

    c) negotiated prices, submitted bids, and issued price announcements for certain electrolytic capacitors in accordance with the agreements reached;

    d) sold, distributed, and accepted payments for electrolytic capacitors at collusive, noncompetitive prices and bids in accordance with the agreements reached;

    e) collected, exchanged, monitored, and discussed information on prices, bids, sales, supply, demand, shipping, and the production of electrolytic capacitors for the

purpose of reaching agreements on prices and bids and monitoring and enforcing adherence to the agreements reached;

  f) authorized, ordered, and consented to the participation of subordinate employees in the conspiracy; and

  g) took steps to conceal the conspiracy and conspiratorial meetings, conversations, and communications through various means, such as using code names to refer to coconspirators, limiting and discouraging retention and distribution of documents reflecting conspiratorial contacts, and providing misleading justifications for prices and bids provided to customers to cover up their collusive conduct.

These means and methods of the conspiracy all involved electrolytic capacitors sold to customers located within the United States and elsewhere, including to customers that manufactured and/or sold in the United States under major United States and other brands significant quantities of electronic goods containing electrolytic capacitors, such as computers, televisions, and gaming systems.

## V. TRADE AND COMMERCE

11. During the time period identified in paragraph 2, NEC TOKIN and its coconspirators manufactured electrolytic capacitors in Japan, Thailand, China, the United States, and elsewhere and sold them in the United States or for delivery to the United States. The charged combination and conspiracy involved trade or commerce within the United States and U.S. import trade or commerce in electrolytic capacitors.

12. During the time period identified in paragraph 2, NEC TOKIN and its coconspirators also sold foreign-manufactured electrolytic capacitors outside the United States for incorporation into other products, including computers, televisions, and gaming systems, that were sold in or for delivery to the United States. The charged combination and conspiracy had a direct, substantial, and reasonably foreseeable effect on trade or commerce within the United States or U.S. import trade or commerce in these electrolytic capacitor-containing products, and that effect, in part, gives rise to this charge.

13. During the time period identified in paragraph 2, NEC TOKIN and its coconspirators sold and shipped substantial quantities of electrolytic capacitors in a continuous and uninterrupted flow of interstate and U.S. import trade or commerce from the United States and foreign countries to customers located in various states in the United States, including states other than where the electrolytic capacitors were manufactured. In addition, substantial quantities of equipment and supplies necessary for the manufacture, sale, and distribution of electrolytic capacitors, as well as substantial payments for such electrolytic capacitors sold by NEC TOKIN and its coconspirators, traveled in interstate and U.S. import trade or commerce. During the time period identified in paragraph 2, the business activities of NEC TOKIN and its coconspirators that are the subject of this Information were within the flow of, and substantially affected, interstate and U.S. import trade or commerce. During the time period identified in paragraph 2, the charged combination and conspiracy had a substantial and intended effect in the United States, including on trade or commerce within the United States and U.S. import trade or commerce in electrolytic capacitors and products containing electrolytic capacitors.

### VI. JURISDICTION AND VENUE

14. The combination and conspiracy charged in this Information was carried out, in part, in the Northern District of California, and continued within the five years preceding the return of this Information.

//
//
//
//
//
//
//
//
//

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: September 2, 2015.

_____
William J. Baer
Assistant Attorney General

_____
Brent Snyder
Deputy Assistant Attorney General

_____
Marvin N. Price
Director of Criminal Enforcement

United States Department of Justice
Antitrust Division

_____
Melinda Haag
United States Attorney
Northern District of California

_____
Marc Siegel
Chief, San Francisco Office

_____
E. Kate Patchen
Assistant Chief, San Francisco Office

_____
Jacklin Chou Lem
Alexandra J. Shepard
Howard J. Parker
Henry J. Hauser
Andrew J. Nicholson-Meade
Paradi Javandel
Trial Attorneys