JACKLIN CHOU LEM (CASBN 255293)
ALEXANDRA J. SHEPARD (CASBN 205143)
HOWARD J. PARKER (WASBN 07233)
KAREN J. SHARP (TXSBN 02049500)
ANDREW J. NICHOLSON-MEADE (CASBN 284070)
PARADI JAVANDEL (CASBN 295841)
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
jacklin.lem@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NEC TOKIN CORP.,<br><br>Defendant. | No. CR-15-0426-JD<br><br>**JOINT SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE**<br><br>DATE: January 21, 2016 (requested, pending Court approval)<br>TIME: 10:30 am<br>COURT: Hon. James Donato |

The United States and NEC TOKIN Corp. ("defendant") file this Joint Sentencing Memorandum in support of their recommendation that the Court sentence the defendant to pay a fine of $13.8 million, payable in six equal installments over five years, with interest, no restitution, a special assessment of $400, and no term of probation. The parties request that the Court sentence the defendant immediately following entry of the defendant's guilty plea. This memo and accompanying Declaration of Jacklin Chou Lem provide information the parties

believe is sufficient to allow the Court to exercise its sentencing authority meaningfully without a presentence report, which the Defendant has waived.

## I. INTRODUCTION

On September 2, 2015, the United States filed an Information charging NEC TOKIN with one count of violating the Sherman Antitrust Act, 15 U.S.C. § 1. The Information charges NEC TOKIN with participating in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere. The Information charges a conspiracy that began at least as early as September 1997 and continued until in or about January 2014, and it charges that NEC TOKIN participated in the conspiracy from at least as early as April 2002 until in or about December 2013.

The parties request that the entry of plea and sentencing take place on **January 21, 2016** (the third Thursday in January). NEC TOKIN agrees to waive indictment and plead guilty under Fed. R. Crim. P. 11(c)(1)(C). Under the parties' Plea Agreement, the parties will jointly recommend that NEC TOKIN be sentenced to pay a $13.8 million criminal fine, no restitution, a special assessment of $400, and no probation.

Accompanying this memo are: (1) Declaration of Jacklin Chou Lem ("Lem Declaration"), which the United States requests to be filed under seal; (2) Plea Agreement between the United States and NEC TOKIN (filed as Exhibit A to the Lem Declaration), portions of which the United States requests to be filed under seal to protect the identity of individuals specifically named in Attachment A to the Plea Agreement; (3) Motion, Proposed Order, and Declaration to file the Lem Declaration under seal; and (4) Request and Proposed Order for Expedited Sentencing.

Counsel for NEC TOKIN has reviewed this Joint Sentencing Memorandum, paragraphs 17 and 18 of the Lem Declaration pertaining to the company's substantial assistance, the parties' Plea Agreement, and the Request for Expedited Sentencing. Counsel has no objection to the materials it has reviewed.

/ /

## II. FACTUAL BACKGROUND

The accompanying Lem Declaration provides further detail about the government's investigation into price fixing and bid rigging in the electrolytic capacitors industry. *See* Lem Decl. ¶¶ 4-12. The Lem Declaration also provides background information on NEC TOKIN and its role in the conspiracy. *See* Lem Decl. ¶¶ 13-16. Finally, the Lem Declaration describes the substantial assistance that NEC TOKIN has already provided and has pledged to provide in the future. *See* Lem Decl. ¶¶ 17-18. The United States has requested that the Lem Declaration be sealed to protect the confidential and secret nature of the information it contains.

## III. MATERIAL TERMS OF PLEA AGREEMENT

The material terms of the Plea Agreement include:

1. NEC TOKIN will waive indictment, waive all rights as enumerated in the Plea Agreement, and plead guilty under Fed. R. Crim. P. 11(c)(1)(C) to a one-count Information, charging NEC TOKIN with participating in a conspiracy, from at least as early as April 2002 to in or about December 2013, to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere.

2. NEC TOKIN and the United States agree that the appropriate sentence in this case is a fine of $13.8 million, no restitution, a special assessment of $400, and no term of probation. The parties recommend, in the interest of justice, that the fine be paid in six equal installments over five years, with interest accruing. NEC TOKIN agrees to have its sentence determined under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), although NEC TOKIN understands that the Guidelines are advisory, not mandatory.

3. The United States will not seek restitution in this case in light of the civil class action cases filed against NEC TOKIN, including *In Re: Capacitors Antitrust Litigation* (14-CV-03264-JD), filed in this District before this Court. These civil cases potentially provide for a recovery of a multiple of actual damages.

4. The United States agrees that it will not bring further criminal charges against NEC TOKIN; its related entities, defined as subsidiaries engaged in the sale or production of electrolytic capacitors for which NEC TOKIN has greater than 50% ownership interest; any

3

1  current director, officer, or employee of NEC TOKIN or its related entities; or any individual
2  listed in Paragraph 1 of Attachment A to the Plea Agreement.

3       5. NEC TOKIN agrees to cooperate fully and truthfully in the ongoing electrolytic
4  capacitors investigation. NEC TOKIN also agrees to use its best efforts to secure the
5  cooperation of its current and former directors, officers, and employees – except those
6  individuals listed in Paragraph 2 of Attachment A to the Plea Agreement – including making
7  them available in the United States for interviews and testimony.

8       6. Attachment A to the Plea agreement contains two paragraphs. Paragraph 1 lists
9  individuals who are carve-ins to the Plea Agreement. Carve-ins are cooperating individuals who
10 are included in the non-prosecution provisions of the Plea Agreement. Paragraph 2 lists
11 individuals who are carve-outs to the Plea Agreement. Carve-outs are individuals who are
12 excluded from the non-prosecution provisions and have no corresponding cooperation
13 obligation. The United States has requested that Attachment A to the Plea Agreement be filed
14 under seal to protect the identity of the individuals named.

## IV. SENTENCING GUIDELINES FINE CALCULATIONS

NEC TOKIN's fine is determined under Chapter 2, Part R of the Sentencing Guidelines, which governs antitrust offenses, and Chapter 8 of the Sentencing Guidelines, which governs the sentencing of organizations. U.S.S.G. §2R1.1(d)(1) lays out special instructions for fines applicable to an organization in an antitrust context. Subsection (1) instructs that, "[i]n lieu of the pecuniary loss under subsection (a)(3) of §8C2.4 (Base Fine), use 20 percent of the volume of affected commerce." The reason why 20 percent of the volume of affected commerce is the starting point for calculating a corporate antitrust fine is to avoid the time and expense required to determine actual gain or loss. *See* U.S.S.G. §2R1.1, Application Note 3, U.S.S.G. §8C2.4(b)-(c).

Here, the parties have agreed that NEC TOKIN's volume of affected commerce is $51.1 million. In this case, the parties spent a significant time engaged in plea negotiations in an effort to determine the volume of affected commerce. The agreed-upon volume of commerce includes NEC TOKIN's sales of tantalum electrolytic capacitors in the United States from April 2002 to

4

December 2013 and excludes sales of some types of capacitors that were not subject to the conspiracy. Due to the age and absence of certain data, estimations and approximations were sometimes necessary to arrive at the $51.1 million volume-of-commerce figure.

NEC TOKIN's base fine is calculated as 20 percent of $51.1 million, which is $10.2 million. NEC TOKIN's Guidelines fine range is further calculated by determining a culpability score and then applying minimum and maximum multipliers to the base fine. The Guidelines fine range is determined as follows:

(a) **Base Fine:** The base fine is 20% of the volume of affected commerce of $51.1 million (§2R1.1(d)(1) and §8C2.4(b)). **$10.2 million**

(b) **Culpability Score**

  i. **Base:** Five points are assigned as a starting point for calculating the culpability score (§8C2.5(a)). **+5**

  ii. **Involvement in or Tolerance of Criminal Activity:** The parties have agreed that NEC TOKIN had more than 200 employees but fewer than 1,000 employees and that an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense (§8C2.5(b)(4)). The parties agree that a four-level adjustment is warranted. **+4**

  iii. **Prior History:** NEC TOKIN does not have any prior history of misconduct (§8C2.5(c)). **0**

  iv. **Violation of Order:** NEC TOKIN has not violated any orders (§8C2.5(d)). **0**

  v. **Obstruction of Justice:** The United States has determined that NEC TOKIN has not impeded or obstructed justice (§8C2.5(e)). **0**

  vi. **Effective Compliance and Ethics Program:** NEC TOKIN did not have an effective compliance and ethics program with respect to antitrust violations at the time the offense occurred. The parties agree that no downward adjustment is warranted (§8C2.5(f)). **0**

//
//

|     |     |
| --- | --- |
| vii. **Self-Reporting, Cooperation, and Acceptance of Responsibility:** NEC TOKIN has fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct. The parties agree that a two-point reduction is warranted. | **-2** |
| (c) **Total Culpability Score** | **7** |
| (d) **Minimum and Maximum Multipliers:** Based on a culpability score of 7, the minimum multiple is 1.4 and the maximum multiplier is 2.8 (§8C2.6). | **1.4 – 2.8** |
| (e) **Minimum and Maximum Fine Range:** Applying the minimum and maximum multipliers to the base fine of $10.2 million, the fine range is between $14.2 million and $28.5 million (§8C2.7). | **$14.2 – $28.5 million** |

The parties have agreed that, within the Guidelines fine range, NEC TOKIN's fine should be $18.4 million. This figure accounts for the value of tantalum electrolytic capacitors sold outside of the United States, but incorporated into personal desktop and laptop computers sold in the United States under major U.S. brands.

## V. MOTION FOR DOWNWARD DEPARTURE

In recognition of NEC TOKIN's substantial assistance to the government's investigation and NEC TOKIN's pledge of continuing cooperation, the United States moves under U.S.S.G. §8C4.1 to reduce NEC TOKIN's fine from $18.4 million to $13.8 million, a number that departs below the Guidelines range. Additional information about the nature and value of NEC TOKIN's cooperation is described in paragraphs 17 and 18 of the Lem Declaration.

## VI. NO RESTITUTION

The parties have agreed to recommend that restitution not be imposed. Victims of antitrust offenses may recover treble damages in civil suits for violations of the Sherman Act under provisions of the Clayton Act, 15 U.S.C. §§ 15, *et seq*. In this case, victims have indeed filed civil suits seeking treble damages. The civil class actions are pending in this District before this Court. *See In Re: Capacitors Antitrust Litigation* (14-CV-03264-JD). Moreover, the Mandatory Victim Restitution Act of 1996 does not mandate restitution for Title 15 offenses,

such as the one at hand, but only for crimes of violence and certain Title 18 and Title 21 offenses. 18 U.S.C. § 3663A(c)(1)(A).

## VII. CRIME VICTIMS

Under the Crime Victim's Rights Act, 18 U.S.C. § 3771, and pursuant to the procedures ordered by this Court on October 15, 2015 (Dkt. 8), the United States will notify crime victims of the plea and sentencing on January 21, 2016, should the Court decide to schedule that date. The United States will continue to notify crime victims of any public court proceedings in connection with this matter.

## VIII. CONCLUSION

Based on the foregoing, the parties respectfully recommend that the Court sentence NEC TOKIN to pay a $13.8 million criminal fine (payable in six equal installments with interest), no restitution, a special assessment of $400, and no term of probation. The United States requests that the Court grant its motion for a downward departure in recognition of NEC TOKIN's substantial assistance, resulting in the recommended fine of $13.8 million, a number that departs from the Guidelines range. Finally, the parties also request that the plea and sentencing take place on the same date, January 21, 2016.

Respectfully submitted,

| | |
|---|---|
| */s/ George A. Nicoud III* | */s/ Jacklin Chou Lem* |
| GEORGE A. NICOUD III | JACKLIN CHOU LEM |
| Gibson, Dunn & Crutcher LLP | U.S. Department of Justice |
| Counsel for NEC TOKIN Corp. | Antitrust Division |
| Dated: January 5, 2016 | Dated: January 5, 2016 |